Commonwealth *v.* Brink's, Incorporated,
Appellant.

Argued January 11, 1943. Before MAXEY, C. J.; DREW,
LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Douglass D. Storey,* of *Storey & Bailey,* for appellant.

*Frank A. Sinon,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellee.

OPINION BY MR. JUSTICE DREW, January 29, 1943:

Brink's, Incorporated, appellant, an armored car company doing business in the State of Pennsylvania, appealed to the Court of Common Pleas of Dauphin County from the settlement of the Commonwealth's accounting officers of a tax on its gross receipts, imposed under the Act of June 22, 1931, P. L. 694, for the six-month period ending December 31, 1935. After trial without a jury, the learned court below found in favor of and entered judgment for the Commonwealth; this appeal was taken from that judgment.

Appellant transfers money, commercial paper, securities, and other valuables from one point to another in the larger cities and the areas immediately adjacent thereto by means of armored cars, assuming liability for such property from the time it acquires possession until the moment of delivery. It does so in connection with different types of services, included among which are the following: (1) A collection and deposit service which consists of calling at customers' places of business and collecting money and checks and depositing the same in the customers' banks for them. (2) A bank service whereby funds are transferred from principal banking offices to branches or vice versa; or from Federal Reserve Banks to member banks or vice versa. (3)

An equipment service entailing the leasing of safes to its customers for the safekeeping of funds pending their collection and transfer by armored cars. Also, some of the safes are sold and others leased with no additional service rendered. (4) Various types of payroll service as follows: [a] Customer draws check to order of appellant which cashes it and delivers cash to customer in correct denominations. [b] Customer draws check to order of appellant which cashes it, takes money to its offices and makes up payroll envelopes which are delivered to customer. [c] Same as [b] except that appellant pays off customer's employees. [d] Same as [b] except that appellant cashes payroll checks at customer's plant for employes. (5) A change service which consists of cashing checks given by customers and delivering the money in specified denominations. (6) A ticket service for conventions, exhibitions, games and the like wherein appellant handles the entire sale of tickets from their printing to the accounting of the proceeds to its customer. Besides these services, appellant also furnishes (7) A guard service whereby it supplies uniformed armed guards to customers for various uses, and (8) Rents armored cars with chauffeurs and armed guards to customers. These varied services are rendered under separate contracts with its many customers. The individual contract price is based upon factors peculiar to the customer's situation such as the time of day the service is to be rendered, the locality in or through which it is to be rendered, and the risk involved. As a result, there is no standard rate or uniform charge, nor is there any fixed route or schedule for appellant varies the route and time to suit its convenience and minimize the risks involved. The entire gross receipts of appellant for the period in question were $239,958, of which it claimed only $53,880.81 was directly attributable to the operation of motor vehicles, including in the latter figure, by its formula, only the cost of gas, oil, repairs, insurance, depreciation and the wages of drivers.

The amount was arrived at by the use of a formula, the apportionment being made by appellant on the basis of the relationship of the cost of operating its motor vehicles to the cost of its entire business in the State.

The learned court below, in addition to finding the above facts, also found that: "4. The chief basic activity of [appellant] is the furnishing and safe transportation of cash, securities, and other valuables. The other services above referred to . . . are incidental and inseparable from the basic activity, except that the rental of safes, the guard service, the ticket service, and the rental of armored vehicles may not involve transportation for hire. 5. The [appellant] has failed to properly segregate the portion of its gross receipts which were received from the rental of safes, the guard service, the ticket service, and the rental of armored vehicles . . . 11. The Commonwealth, acting through the Department of Revenue, did not relieve any armored car companies from gross receipts tax liability for the period involved. The competitors named by the [appellant] either paid gross receipts tax, . . . or reports were demanded from them with the intention of enforcing collection, . . . or they had withdrawn from the State, . . . or there was no record of their existence, . . . or they had ceased business [as in the case of the Nagle Protective Agency which company appellant had purchased in November of 1935]."

The statute involved, the Act of June 22, 1931, P. L. 694, is entitled: "An Act imposing a tax on gross receipts as an excise on the use of the public highways by certain owners or operators of motor vehicles transporting passengers and property for hire." Section 1 of the Act defines "company" as including any operator which "shall engage in the business of carrying passengers or property for hire over the highways of this Commonwealth in motor vehicles or trackless trolleys." Section 2 provides that "Each company shall pay an excise tax for the use of the highways of this Com-

monwealth." It also requires each company, "for the purpose of ascertaining the amount to be paid", to file semi-annual reports setting forth, inter alia, the "schedule, if any, or, if not, a description of the routes over which such company shall have operated over highways in this Commonwealth during the period for which the report is filed" and "the amount of gross receipts of such company from all sources upon its operations during the period for which the report is filed." A deduction is permitted by Section 3 "In the event . . . that an excise tax shall be paid by any company to any city of this Commonwealth for the use of its highways, during the period for which the report is filed, . . ."

Appellant contends that it is not subject to the provisions of this Act; and further, that even if it is, the failure of the Commonwealth to assess a like tax against competing armored car companies renders the settlement against it discriminatory and, therefore, void and, secondly, that only a portion of its gross receipts are subject to the tax in any event.

It has been decided that appellant is not a common carrier subject to the supervision of the Public Service Commission: *Brink's Express Co. v. P. S. C.*, 117 Pa. Superior Ct. 268.[1] However, whether it is or is not a common carrier is not important for the taxing statute is not limited to common carriers in its application.[2] Section 1 includes all those operators of motor vehicles engaged "in the business of carrying passengers or

---

[1] There is a recognized class of carriers known as "contract carriers" which transport persons or property for hire, but which are not common carriers. (See Act of May 28, 1937, P. L. 1053, Art. I, Sec. 2 (7), known as the Public Utility Law, as last amended by the Act of July 3, 1941, P. L. 267, and Art. VIII, Sec. 804, as amended by the Act of July 3, 1941, P. L. 267.) Appellant apparently is within this class of carriers and now subject to the supervision of the Public Utility Commission.

[2] This view of the effect of a similar gross receipts tax statute was expressed in *Com. v. J. Kenny Transfer*, 40 Dauph. 365.

property for hire over the highways of this Commonwealth". This language includes all companies so operating, even though they are not common carriers or public utilities. Appellant's main function is the transference of funds and valuables for its customers, all else is secondary. The various types of services performed are the different situations in which safe transportation is most desired. The court below specifically found such to be the fact. Its finding, amply supported by the testimony adduced at the trial, was that: "The chief basic activity of [appellant] is the furnishing and safe transportation of cash, securities, and other valuables. The other services above referred to . . . are incidental and inseparable from the basic activity . . ." Clearly, appellant is primarily engaged in the "business of carrying . . . property for hire" within the intent of the taxing statute and thus falls within the express language of the statute even though not holding itself out as a common carrier.

Appellant's other contentions to support its position that its activities do not fall within the terms of the statute are also without merit. Money, the carriage of which is appellant's principal business, is certainly property, and contrary to the contention of appellant, within the terms of the statute. It may be composed of a precious metal or be readily convertible into such metal, and even where it is not so convertible, it possesses value by reason of its powers of immediate purchase or exchange. It would be stretching the plain meaning of the word "property" to say that money, even when represented by currency, is not property: 34 Words and Phrases 480-484. Appellant next resorts to the argument that it does not operate on schedules or over fixed routes and is not, therefore, within the class of carriers subject to the tax. Section 2 of the Act admittedly requires a report of routes and schedules if there are any, but this requirement is obviously one imposed for the express purpose of facilitating proper administration of the

act and eliminating tax evasion. It does not mean that where there are none the carrier is not within the plain language of the statute. The final argument of appellant in its endeavor to avoid completely the operation of this Act is its contention that it operates only in cities and does not, therefore, "use the highways of the Commonwealth". As pointed out by the court below: "It would be a rather strained construction to hold that the terms 'the public highways' as used in the title, and 'the highways of this Commonwealth', as used in the first Section, do not apply to city streets. The city streets are highways *in* this Commonwealth, and we are of opinion that they are, therefore, 'highways *of* this Commonwealth' ". See *Tranter v. Allegheny Co. Authority,* 316 Pa. 65, at page 74. Furthermore, in four of the five cities in which appellant operates, a considerable number of streets have been taken over and incorporated into the State Highway system under the Act of June 22, 1931, P. L. 720, as variously amended.[3] Appellant, in the use of armored cars in these cities, necessarily carries property over state highways, and is, therefore, clearly within the provisions of the Act. Section 3 of the Act furnishes another complete answer to appellant's contention. It permits a deduction "In the event . . . that an excise tax shall be paid by any company to any city of this Commonwealth for the use of its highways, during the period for which the report is filed, . . ." for the full amount of such tax payment. Obviously, the legislature intended to include city streets within the statute for otherwise it would not have given credit on the State tax for any city excise tax which a company might have to pay. Appellant, in its mode of operation, is clearly within both the letter and spirit of the Act of June 22, 1931, P. L. 694, and is subject to the gross receipts tax imposed by it.

---

[3] Streets in the City of Philadelphia were not taken over and incorporated into the State Highway system until the Act of May 7, 1937, P. L. 589.

Even though it is subject to the tax, appellant maintains that the settlement in the instant case is discriminatory, unconstitutional, and, therefore, void because other armored car operators were not subjected to this tax for the period involved. It is fundamental that a settlement against one corporation, when other like corporations are not taxed, is lacking in uniformity and is invalid: *Rich Hill Coal Company v. Bashore,* 334 Pa. 449, 498. This is true of excise taxes as well as of property taxes: *American Stores Co. v. Boardman,* 336 Pa. 36, 42. However, an exact and perfect uniformity is never required: *Commonwealth v. McCarthy,* 332 Pa. 465, 469; *Commonwealth v. Del. Div. Canal Co.,* 123 Pa. 594, 620. The tax in question is imposed upon all users of the highway who "engage in the business of carrying passengers or property for hire . . . in motor vehicles." Appellant is within this class and the test of uniformity is, therefore, not whether one or two armored car operators have managed to escape tax liability, but whether the settlements made against the numerous other carriers subject to this act are in substantial accord with the settlement against appellant. There was no evidence, nor was the contention advanced, that appellant was not taxed in the same manner as other carriers in general. However, even if the test of uniformity be limited to the small group of carriers engaged in the armored car business, appellant has failed to establish any discrimination or lack of uniformity. The court below expressly found, and there was ample testimony to substantiate its finding, that the Commonwealth did not relieve any armored car companies from liability for the gross receipts tax for the period involved. Rather, the competitors named by appellant as having been relieved "either paid gross receipts tax, . . . or reports were demanded from them with the intention of enforcing collection, . . . or they had withdrawn from the State, . . . or there was no record of their existence, . . . or they had ceased business [as in the case of the Nagle Protective

Agency which company appellant had purchased in November of 1935]."

The final contention urged by appellant is that only a portion of its gross receipts was derived from the operation of its armored motor vehicles, and that only such portion should be taxed. It has been pointed out that appellant is subject to the tax on gross receipts imposed by the Act. The burden is upon it, therefore, to show clearly that a portion of its gross receipts is exempt from the tax for "It is well settled that where the taxpayer, or his property, is within the general language of the statute imposing the tax, all provisions relied upon to establish an exemption from the tax are to be strictly construed against the claim for exemption [citing cases]": *Commonwealth v. McCarthy*, supra at p. 468. In considering this question, it should be noted that Section 2 of the Act requires each company to report the "amount of gross receipts . . . from all sources upon its operations", and Section 3 specifies that the tax rate shall be "eight (8) mills upon the dollar upon the gross receipts . . . from all operations" for companies operating entirely within the State. The language of the statute clearly shows that, not only are the gross receipts of carriers which result directly from transportation taxable, but also all gross receipts arising from directly related and connected activities. Appellant's basic activity is the safe transportation of cash, securities and other valuables, the other services it performs are but incidental to and inseparable from its basic activity. The apportionment urged by appellant is neither based on fact nor has exact figures to support it. Although appellant may secure an exemption for gross receipts arising from activities totally disassociated from transportation, it cannot do so by means of a " 'guess' or a 'formula', which is not based upon figures." Further, although, as found by the court below, "the rental of safes, the guard service, the ticket service, and the rental of armored vehicles may not involve transportation for hire", it is nevertheless clear, as pointed out

by the court below, that appellant has, in the instant case, "failed to properly segregate the portion of its gross receipts which were received" from the rendering of these miscellaneous services.

Appellant's arguments to avoid tax liability under this Act, either in full or in part, are clearly without merit, and we have so found them. The judgment of the learned court below must be affirmed.

Judgment affirmed.