T. M. Zimmerman Company, Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued March 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*John M. Musselman,* with him *Rhoads, Sinon & Reader,* for appellant.

*Paul Ribner,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY WRIGHT, J., April 13, 1961:

We are here concerned with an appeal by the T. M. Zimmerman Company from an order of the Pennsylvania Public Utility Commission, dated June 27, 1960, declaring certain transportation to be beyond the scope of appellant's certificated authority, and directing that appellant cease and desist from the transportation of property not authorized by its certificate of public convenience.[1] The question before us is whether appellant may transport foodstuffs under a certificate of public convenience authorizing the transportation as a Class D carrier of "new household goods, new furniture, new furnishings, new stock and fixtures, new office furniture and equipment and new

---

[1] The Commission stated that appellant's "activities were apparently conducted under a mistaken belief that it had the necessary authority, and hence do not invite the condemnation and imposition of penalties".

works of art". Simply stated, this question turns on the interpretation in context of the words "new stock". It will be necessary to set forth the factual and procedural history in some detail.

On January 14, 1956, the T. M. Zimmerman Company, a motor carrier holding certain rights not material here, applied to the Commission for the transfer of rights issued to one Joseph Kulb. These rights authorized the transportation, as a Class D carrier, of "new household goods, new furniture, new furnishings, new stock and fixtures, new office furniture and equipment and new works of art" in designated areas. At the hearing on March 19, 1956, protestants appeared to challenge the transfer. Thereafter, by an order of the Commission dated August 6, 1956, the transfer was approved. However, in its discussion of the matter, the Commission observed that certain of the transportation rendered by Kulb exceeded the authority intended by the rights originally granted and as constituted at the time of the transfer. Continuing, the Commission stated:

"Commission records show that the carrier authority here under consideration issued originally to Harry Andre, trading as Dependable Storage Company, Philadelphia. Andre was granted original rights at A. 25848, F. 1 on July 10, 1933, to transport household goods and office furniture in use between points in Philadelphia and 12 trips annually to points within 25 miles, said rights expiring August 1, 1935, unless renewed. Thereafter, Andre applied at A. 25848, F. 2 to expand his carrier authority and the application was approved August 1, 1934, superseding the rights at A. 25848, F. 1, and authorizing the transportation of new and used items as set forth in the rights and territory enumerated above. The rights at A. 25848, F. 2 were renewed at A. 25848, F. 3 on February 2, 1937, and following the demise of Harry Andre on

January 7, 1954, the new and used rights were sold to Joseph Kulb (A. 79510, F. 3) with Commission approval granted June 27, 1955. Kulb sold the used portion of the rights to George D. McClain, Jr. (A. 82467) with Commission approval granted October 17, 1955, and in the instant application seeks authority to convey the new portion of the rights.

"The record at A. 25848, F. 2 shows that Harry Andre operated a storage warehouse servicing about 75 accounts, conducting a used furniture store at the same location and, in conjunction therewith, was engaged in transporting household goods in use.

"It is our opinion, after review of the original record, that Andre sought and the Commission in granting the right 'to transport new household goods, new furniture, new furnishings, new stock and fixtures, new office furniture and equipment and new works of art' intended that those items in completely manufactured form be transported only to the ultimate user of the commodity. It was not intended that the authority granted should embrace shipments from manufacturers to distributors and dealers in those commodities, but only from dealers or such other original source, to the ultimate consumer or user. Therefore, shipments en masse of electric toasters, bunk beds, gas ranges, furniture, electric window fans, et cetera, which apparently were transported to other than the ultimate user or consumer and steel tin plate representing an unfinished product moved under the guise of 'stock', when transported by Kulb were, in our opinion, clearly in violation of the carrier authority and the present and any subsequent holder of the rights shall be guided accordingly".

The Commission determined that the application for transfer should be approved "subject to our comments herein", and the order was entered "for the beginning of the exercise of said rights in the manner

and within the limitations as herein discussed . . . subject to the limitations embodied in this order".

On August 22, 1956, a petition for reconsideration and modification was filed, seeking elimination of the references to limitation of the rights on the ground that new limitations or restrictions could not be imposed in a transfer proceeding. Thereafter, the Commission made an order on February 4, 1957, in which it adopted the language of its prior order, except that the phrases quoted in the preceding paragraph were deleted. The Commission pointed out that the phrases in question had been intended, not to impose or attach new restrictions or conditions, but to put the parties on notice that the rights "did not authorize certain service which transferor asserted he had been providing".

On February 25, 1957, a petition for further reconsideration and modification was filed, seeking elimination of certain language in the order which was still objectionable to the parties. On May 20, 1957, the Commission entered a third order, again reciting the history of the rights, but amending the paragraph to which exception had been taken so that it read:

"It is our opinion, after review of the original record, that Andre sought and the Commission in granting the right 'to transport new household goods, new furniture, new furnishings, new stock and fixtures, new office furniture and equipment and new works of art' intended that only those items in completely manufactured form be transported. Therefore, shipments of steel tin plate representing an unfinished product moved under the guise of 'stock' when transported by Kulp were, in our opinion, clearly in violation of the carrier authority and the present and any subsequent holder of the rights should be guided accordingly."

The instant proceeding had its inception on December 21, 1959, when the Commission issued a rule to show cause why appellant's certificate of public convenience should not be cancelled or other appropriate penalties imposed because appellant "has transported property without first having obtained the necessary authority . . . as required by Section 201 of the Public Utility Law". Act of May 28, 1937, P. L. 1053, 66 P.S. 1101 et seq. The gravamen of the complaint was that appellant had transported large quantities of foodstuffs from Mrs. Paul's Kitchens in the City of Philadelphia to food wholesalers in the Pittsburgh area.[2] Appellant filed an answer to the rule asserting that its certificate authorized the transporting of foodstuffs. Following the taking of testimony on March 8, 1960, and oral argument on May 24, 1960, the Commission issued the order dated June 27, 1960, which is the subject of the present appeal.

Appellant contends that the order is erroneous for the reasons (1) that there is no substantial evidence to support the findings and conclusions of the Commission; (2) that the findings and conclusions of the Commission are not based upon reason or common sense; and (3) that the meaning of the authorization

---

[2] By way of illustration— On November 3, 1959, a shipment to Morrison & McCluan, 2301 Smallmann Avenue, Pittsburgh, consisted of the following: "50 packages of devilled crabs, weighing 300 pounds. 50 packages of twin-pack seafood dinners, weighing 450 pounds. 25 packages of scallops, weighing 163 pounds. 100 packages of fish fillets, weighing 750 pounds. 100 packages of fried shrimp, weighing 600 pounds. 100 packages of R. T. oysters, weighing 650 pounds. 600 packages of fish sticks, weighing 4,500 pounds. 50 packages of onion rings, weighing 225 pounds. 150 packages of family pack fish sticks weighing 1,575 pounds. 25 packages of seafood dinners, deluxe, weighing 800 pounds. 50 packages of crab miniatures weighing 300 pounds. 160 packages of eggplant weighing 1,030 pounds. 20 packages of assorted crabs weighing 320 pounds. 25 packages of fried clams weighing 125 pounds".

for the transportation of "new stock" is inclusive of foodstuffs. In connection with these contentions in general, we quote with approval the following excerpt from the Commission's order:

"The difficulty with respondent's position, as we see it, is that it is considering the meaning of the words 'new stock', as if they were standing alone and unrelated to the other language of the authority. Respondent has taken the words out of context and has attempted thus to give them a meaning entirely independent of the source from which they were taken. It is clear from a reading of the enabling or authorizing clauses that the Commission granted permission to carry new household goods, new furniture and equipment, and new works of art, using the word 'new' to distinguish the authority from that of a carrier empowered to transport household goods, et cetera, in use. However, the main scope or area of the authority granted involves the transportation of articles, for purposes of utility or adornment, necessary or incidental to the setting up of new living or commercial quarters. It is not contemplated, either in the application submitted or in the authority granted, that respondent would be empowered to carry foodstuffs. If the respondent's position were correct, the use of the words 'new stock' in a certificate, would be all-embracing, and would vest in the applicant authority to carry anything so long as it was new or of recent origin."

The scope of our review in cases of this nature is to determine whether there is error of law, lack of evidence to support the order, or violation of constitutional rights. We do not substitute our judgment for that of the Commission: *Weston Hauling, Inc. v. Pa. P.U.C.*, 185 Pa. Superior Ct. 503, 138 A. 2d 286. In the words of President Judge RHODES in *Dillner Transfer Co. v. Pa. P.U.C. (No. 1)*, 175 Pa. Superior

Ct. 461, 107 A. 2d 159: "Furthermore, the Commission, as an administrative agency, is peculiarly fitted to interpret its own orders, especially where the question raised concerns the extent and limit of transportation rights granted a carrier under a certificate issued by the Commission. In recognition of this principle a court will not set aside a construction placed upon its own orders by an administrative agency unless the result is clearly erroneous, arbitrary and unsupported by evidence".

(1) Appellant argues that the Commission's order does not cite, make reference to, or utilize any evidence of record. To the contrary, the Commission reviewed in detail appellant's application for transfer from Kulb, and the record made in connection therewith, all of which was introduced and admitted in the present proceeding. In determining the extent of the authority granted in a certificate of public convenience, the type of service contemplated at the time of the original application is a significant consideration: *Ferry v. Pa. P.U.C.*, 192 Pa. Superior Ct. 331, 162 A. 2d 266. The history of the certificate in the case at bar, as set forth in the Commission's several orders approving the transfer, clearly indicates that there was never any intention to authorize the transportation of foodstuffs. It is apparent that the authority was originally granted to transport household goods and office furniture in use, in connection with the operation of a storage company. The rights were subsequently broadened to permit the transportation of new and used household goods, furniture, furnishings, stock and fixtures, office furniture and equipment, and works of art. After Kulb acquired the rights from the Andre Estate, he sold the used portion to a third party, leaving the new portion to be transferred to appellant. It is significant that Kulb testified that he had almost entirely limited himself to the transpor-

tation of furniture and appliances. It is also significant that, although the transfer was originally approved in August, 1956, the transportation of foodstuffs was not undertaken by appellant until the month of May, 1959, almost three years later.

Appellant argues that the words "new stock" are clear, unequivocal, and not ambiguous. However, in the very next sentence appellant concedes that there is disagreement as to the meaning of the term. Appellant further argues that, because the Commission twice amended its order approving the transfer, and the parties thereafter consummated the transaction and the monetary consideration was passed, the present action of the Commission constitutes "violation of the fundamental principles of fairness and the guarantees of the Pennsylvania and United States Constitution". We here reiterate that there is nothing in any of the orders which would justify an inference that the transportation of foodstuffs was meant to be authorized. The words "new stock" as used in the certificate are actually part of the phrase "new stock and fixtures", and the term must be read in context.

(2) Appellant further contends that the Commission's restriction of the meaning of "new stock" is arbitrary and highly imaginative, and limits the scope of authority "to its finest possible measure short of vacuum". One answer to this contention is found in the testimony that the transportation of foodstuffs constitutes but three to five percent of appellant's business. Appellant asserts that it has transported "new stock" from and to warehouses and stores, such as general merchandise from warehouses to mail order stores of Sears, Roebuck & Co., automotive supplies from automotive warehouses to automotive stores, drugs and drug supplies from drug warehouses to drug stores, sporting goods from sporting goods suppliers to sporting goods stores, as well as packaged food-

stuffs. However, it is well established that a certificate of public convenience may not be enlarged by ex parte action on the part of the holder thereof: *Marmer v. Pa. P.U.C.*, 190 Pa. Superior Ct. 436, 154 A. 2d 262. We have already quoted with approval the Commission's language to the effect that "the main scope or area of the authority granted involves the transportation of articles, for purposes of utility or adornment, necessary or incidental to the setting up of new living or commercial quarters". It is our view that the words "new stock" may not be lifted from context, either in conjunction with the words "and fixtures" to which they are inexorably linked, or in connection with the entire recital of rights.

(3) Appellant's final argument is "that the proper meaning of the words as used is finished goods moving in the mercantile channel of manufacturer-distributor-dealer-consumer". As noted by the Commission, such a meaning would be all-embracing, and would vest in the appellant authority to carry anything whatever, so long as it was new or of recent origin. We were presented with a somewhat parallel situation in *Ferry v. Pa. P.U.C.*, supra, 192 Pa. Superior Ct. 331, 162 A. 2d 266, wherein we rejected the contention of a motor carrier that the word "property" as contained in a certificate authorized the bulk transportation of gasoline and fuel oil. It was therein noted that a construction of the word "property" to include any type of property except as specifically limited in the certificate "would lead to chaos in the transportation industry". Similarly, in *Darby v. Pa. P.U.C.*, 189 Pa. Superior Ct. 312, 150 A. 2d 378, we rejected a contention that a right to transport "groceries" included the right to haul body cleaners and wax to automative supply stores.

Appellant places reliance on *Andrew G. Nelson, Inc. v. United States*, 355 U.S. 554, 78 S. Ct. 496, which

concerned the authority to transport "stock in trade of drug stores" as contained in Nelson's certificate. The distinction between "new stock and fixtures" and "stock in trade" is obvious. The words "stock in trade" are clearly synonymous with the word "merchandise" and would include property normally offered for sale in a mercantile establishment. While such property might in proper context be termed "stock", we are satisfied that the Commission properly rejected such a definition when construing the phrase "new stock and fixtures". To give the words "new stock" the meaning sought by appellant would, in effect, render the remaining rights authorized by the certificate superfluous. The term "stock", used in the sense contended for by appellant, could readily include household goods, furniture, furnishings, equipment, office furniture and equipment and even works of art.

To summarize, we have carefully reviewed this record and do not find errors of law, lack of evidence, or violation of constitutional rights. We have therefore concluded that the order of the Commission should not be disturbed.

Order affirmed.