Purolator Security, Inc., Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission: WFB, Inc., Intervening Appellee.

Brink's, Incorporated, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission: WFB, Inc., Intervening Appellee.

Argued March 10, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three. Reargued September 15, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT.

*James W. Patterson*, with him, of counsel, *Harper, George, Buchanan & Driver*, for appellant, Purolator Security, Inc.

*Herbert R. Nurick*, with him, of counsel, *McNees, Wallace & Nurick*, for appellant, Brink's, Inc.

*Joseph J. Malatesta, Jr.*, Assistant Counsel, with him *William T. Hawke*, Assistant Counsel, and *Edward J. Morris*, Counsel, for appellee.

*William M. Barnes*, with him *Schnader, Harrison, Segal & Lewis*, for intervening appellee.

OPINION BY JUDGE BLATT, October 17, 1977:

Purolator Security, Inc. and Brinks, Incorporated (appellants) have each appealed from an order of the Pennsylvania Public Utility Commission (PUC) which held that WFB, Inc.'s (intervening appellee) activities had been within the scope of its certificated authority. These appeals have been consolidated.

In 1951, Ray Slater applied for, and after a hearing, was granted, a certificate of public convenience[1] which authorized him:

> To transport, as a Class B carrier, *property* between points in the city and county of Philadelphia. (Emphasis added.)

---

[1] Ray Slater and Joseph Slater, his brother, had held a certificate of public convenience as Slater Brothers since 1933. After their partnership was dissolved, Ray Slater applied for, and received, a certificate in his own name. The PUC's order states that it considered Ray Slater's application "as being one for the commencement of a new service" and, after hearings and the development of a record, a certificate was issued to Ray Slater and the Slater Brothers' certificate was cancelled.

In 1972, the Slater certificate was purchased by L & E Transportation Company, which transferred the certificate to WFB in 1974. When WFB began operating an armored transportation service, the appellants filed complaints with the PUC alleging that such a service was beyond the scope of the certificate of authority then held by WFB. The PUC dismissed the appellants' complaints and this appeal followed.

Our scope of review here is limited by Section 1107 of the Public Utility Law,[2] 66 P.S. §1437, which provides, *inter alia*, as follows:

> The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights.

In *W. J. Dillner Transfer Co. v. Public Utility Commission*, 175 Pa. Superior Ct. 461, 467, 107 A.2d 159, 162 (1954), it was held that

> the Commission, as an administrative agency, is peculiarly fitted to interpret its own orders, especially where the question raised concerns the extent and limit of transportation rights granted a carrier under a certificate issued by the Commission. In recognition of this principle a court will not set aside a construction placed upon its own orders by an administrative agency unless the result is clearly erroneous, arbitrary, and unsupported by evidence. (Citations omitted.)

*Accord, T. M. Zimmerman Co. v. Public Utility Commission*, 195 Pa. Superior Ct. 77, 169 A.2d 322 (1961).

Where, as here, the PUC is required to determine the extent of the authority granted in a certificate of

---

[2] Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1101 et seq.

public convenience, "the type of service contemplated at the time of the original application is a significant consideration." *Ferry v. Public Utility Commission*, 192 Pa. Superior Ct. 331, 336, 162 A.2d 266, 269 (1960) (citations omitted); *accord, T. M. Zimmerman Co., supra.*

At the hearing held on his application for a certificate of public convenience in 1951, Slater testified, in part, as follows:

Q. What type of special service are you presently rendering and do you propose to render in the transportation you perform?

A. Do a bit of rigging and a type of special hauling.

Q. Are you equipped to perform that operation?

A. Yes, sir.

Q. What type of property are you transporting and will you transport if this application is granted?

A. General commodities.

Q. Could you give that in a little bit more detail. In other words, what type of property have you been transporting over the years as to less truckload, truckload, crated, and so forth?

A. Steel, steel products, rubber plant products, cloth, groceries, ship supplies, electrical supplies, machinery. I would say we touch near everything.

Q. Are some of those crated vessels, uncrated?

A. Crated, drums of oil, lots of stuff put up in paper bags, lots in cartons.

Q. Others are uncrated?

A. Others uncrated.

In the order appealed from here, the PUC found that, in 1951, Slater had

intended to haul all types of general commodities, including: rubber goods, waterproofing goods, Army, Navy and Marine cloth, steel and steel products, automatic sprinklers and parts, antifreeze, motors, auto parts, food machinery parts, flooring, general machinery, iron and iron works, wood block, tanks, pumps, brewery tanks, candy machinery, brick, lime, stone, bath tubs, plaster, wool, tile, cranes, shovels, derricks, diggers, ditch diggers, garage doors, step rails, printing ink, automatic air guns, hammers, drills, tractors, bull dozers, cranes, dock equipment, poles, railroad equipment, leather goods, plaster, scaffolding, jacks, etc.

Slater also testified at the 1951 hearing that he had 10 pieces of equipment (tractors, semi-trailers, and straight stake trailers) and that some tractors had special equipment attached (two power winches, one pole trailer and two low-bed trailers). The PUC, in its present order, stated that the possession of this equipment indicated that Slater intended to provide specialized transportation services which required specialized equipment and specialized handling. The PUC then concluded that

a review of the record indicates that Ray Slater applied for and was granted the right to transport 'near everything' whether it involves general hauling or specialized hauling.

The issue here is whether or not the PUC properly determined that WFB's certificate of public convenience, authorizing the transportation of *property,* includes the authority to transport monies, securities and other valuables.

In *Ferry v. Public Utility Commission, supra,* the issue was whether or not a certificate of authority which authorized the transportation of property included the authority to transport liquid fuel and gaso-

line.[3]   The PUC in that case held that no such authority was included, and our Superior Court, in affirming, stated as follows:

Appellant contends here that the word 'property' as contained in his certificate of authority gave him the right to transport any type of property except as to the specific limitations contained in said certificate.  He urges that the term 'property' should be used in its generic sense and that, therefore, no limitations should be placed on it.  Such construction, of course, would lead to chaos in the transportation industry.  Certificated carriers of one commodity would discover that, regardless of the service offered to the public, its field of certification would be invaded by another carrier and that he, in turn, could invade a field of transportation never contemplated by him.  The public, on the other hand, would be left to the whim of the carrier, and if the carrier did not see fit to haul a certain type of commodity, he could refrain from such hauling or demand that other commodities be turned over to him for hauling, as a condition to accepting the commodity. Hearings by the Commission for authority to

---

[3] The certificate of public convenience authorized the carrier as follows:

'To transport, as a Class D carrier, property (excluding newspapers, ice cream, bread, frozen foods, household goods in use and any other property, any single unit or piece of which weighs in excess of five (5) tons, of which would require the use of low-bed trailers or trucks) from points in the Borough of Martinsburg, Blair County, and within an airline distance of thirty (30) miles of the limits thereof to points within an airline distance of one hundred eighty miles of the limits of said Borough, and vice versa. . . .'

*Ferry v. Public Utility Commission*, 192 Pa. Superior Ct. at 334, 162 A.2d at 268.

grant or refuse certification for the transportation of certain commodities would be abolished and objections by certificated carriers would be useless if such a broad interpretation of 'property' as here contended for by appellant would be authorized.

*Ferry v. Public Utility Commission,* 192 Pa. Superior Ct. at 334-335, 162 A.2d at 268.

*Accord, T. M. Zimmerman, supra.* We believe that *Ferry v. Public Utility Commission, supra,* controls here and that the PUC's order that WFB's authority to transport property includes the authority to transport monies, securities and other valuables, was clearly erroneous. The 1951 record reveals that Slater did not have the armored vehicles and guards which were a practical requirement for transporting monies and that he never contemplated offering such a service.

The PUC, in its order, stated that

[g]enerally, 'property' certificates are given by the Commission to authorize the transportation of all tangible property; however, such grants of authority are conferred in such a manner so as not to harm those carriers that provide *specialized transportation services,* e.g., heavy equipment haulers, *armored carriers,* frozen food haulers, carriers of household goods, and carriers of liquid petroleum products. *In order to engage in one of the specialized fields of transportation, a carrier must make a relatively large investment in specialized equipment, and must provide the service that includes a specialized handling of the goods transported.* Because of the great expense involved in equipment and in the handling of goods, and because of the limited kind of commodities transported, this Commission has followed a policy of grant-

ing wide geographical rights to such specialized carriers. *See* Re Allied Asphalt Co., Application Docket No. 92761, 33 Pa. P.U.C. 622, 76 P.U.R. 3d 184. In order to protect the grants of wide geographical authority, this Commission has also provided a shield against destructive competition invasion from carriers who have been granted wide geographical 'property' rights. *See* Ferry v. Pa. P.U.C., supra. (Emphasis added.)

We believe that the policy stated above clearly applies to protect the appellants here and that it supports the conclusion that WFB's authority does not extend to the transportation of monies, securities and other valuables.[4]

We note that *Commonwealth v. Brinks, Inc.*, 346 Pa. 296, 30 A.2d 128 (1943) is not applicable here. In that case our Supreme Court held that monies were property for the purpose of computing a tax on gross receipts as an excise on the use of the public highways

---

[4] WFB may apply in the future for such authority pursuant to Section 203 of the Law, 66 P.S. §1123, which provides as follows:

(a) Every application for a certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public; and the commission, in granting such certificate, many impose such conditions as it may deem to be just and reasonable. In every case, the commission shall make a finding or determination in writing, stating whether or not its approval is granted. Any holder of a certificate of public convenience, exercising the authority conferred by such certificate, shall be deemed to have waived any and all objections to the terms and conditions of such certificate.

by operators of motor vehicles transporting property. Although it is clear that monies are tangible personal property, as opposed to real estate or intangible property, and that a transporter of monies was included within the taxing statute involved in *Commonwealth v. Brinks, Inc., supra,* that case is not determinative here, for, in the case at hand, our inquiry relates only to what services were contemplated by Slater at the time a certificate of public convenience was issued to him.

The order of the PUC is, therefore, reversed.

President Judge BOWMAN dissents.

### ORDER IN 787 C.D. 1976

AND Now, this 17th day of October, 1977, the order of the Pennsylvania Public Utility Commission is reversed.

### ORDER IN 824 C.D. 1976

AND Now, this 17th day of October, 1977, the order of the Pennsylvania Public Utility Commission is reversed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

Essentially, I believe that this Court's extremely narrow scope of review and the record in this case preclude our reversal of the interpretation by the Public Utility Commission (PUC) of its own order. The majority has correctly noted that the PUC is peculiarly fitted to interpret its own orders and to determine the extent and the limit of transportation rights granted to a carrier under its certificate of public convenience. *See Ferry v. Public Utility Commission,* 192 Pa. Superior Ct. 331, 162 A.2d 266 (1960) ; *Marmer v. Public Utility Commission,* 190 Pa. Superior Ct. 436,

154 A.2d 262, *allocatur denied* (1959). Also briefly
mentioned by the majority was resulting limited re-
view by this Court to determine whether the construc-
tion placed upon a certificate by the PUC is clearly
erroneous, arbitrary, and unsupported by the evidence.
*See T. M. Zimmerman Co. v. Public Utility Commis-
sion,* 195 Pa. Superior Ct. 77, 169 A.2d 322 (1961);
*Ferry, supra; Marmer, supra; W. J. Dillner Transfer
Co. v. Public Utility Commission,* 175 Pa. Superior Ct.
461, 107 A.2d 159 (1954). However, I do not believe
this scope of review and the reasoning supporting it
have been correctly applied by the majority.

The issue before this Court is whether the PUC's
decision, that its prior grant of authority to transport
"property" meant the right to transport all types of
general commodities, including monies, securities, and
other valuables, was *clearly* erroneous, arbitrary, *and*
unsupported by the evidence. In reaching a decision,
the Court may weigh several considerations.

A significant but not sole consideration is the type
of service contemplated at the time of the original
application for a certificate of public convenience. *See
Ferry, supra.* The instant record clearly reveals both
that the original applicant contemplated hauling "near
everything," including commodities which required
specialized hauling equipment, and that the applicant
was granted authority to transport "property" between
points in a limited geographical area. Reviewing these
facts and recalling that those carriers which only pro-
vide hauling for particular types of commodities are
normally granted wide geographical authority,[1] the
PUC concluded that the hauling of "near everything"
was indeed contemplated at the time the original cer-
tificate was granted. While many aspects of this case

---

[1] Appellants, Purolator Security, Inc., and Brink's Incorporated,
have authority to transport monies, securities, and other valuables
between any points in Pennsylvania.

are clear, it is not clear that this conclusion was erroneous, arbitrary, and unsupported by the evidence.

Another consideration is our Supreme Court's unanimous holding in *Commonwealth v. Brink's, Inc.*, 346 Pa. 296, 301, 30 A.2d 128, 131 (1943), that "[i]t would be stretching the plain meaning of the word 'property' to say that money, even when represented by currency, is not property: 34 Words and Phrases 480-484." Thus, a carrier of monies, securities, and other valuables was determined to be transporting property for hire on the public highways. I am not persuaded by the majority's suggestion that this persuasive authority is inapplicable because the Court's inquiry here relates *only* to what services were contemplated at the time the original certificate was granted.

A third consideration is the case found to be controlling by the majority, *Ferry, supra*. In that case, the Superior Court *affirmed* a PUC determination that an applicant, who had stipulated that the word "property" in his certificate should be limited to building supplies, did not have authority to transport petroleum products. By way of dictum, the Court expressed a fear of chaos in the transportation industry, should the term "property" be used in its generic sense. Initially, I question the applicability of *Ferry* to the facts of the instant case. Further, I fail to recognize how affirming the PUC's interpretation regarding a single "property" hauler, who requested authority to haul "near everything" and was granted authority in a limited geographical area, will lead to general chaos. Surely, the peculiar facts in this case will not support such a broad precedential effect. If chaos is to be visited upon the transportation industry, the majority's assault on the PUC's proficiency in reliably interpreting its own orders will, in my view, be a more significant factor for such a result than using the term "property" in its generic sense.

Because there is evidence to support a conclusion that the hauling of all property was originally contemplated and case law holding that property includes money, I would hold that PUC's construction of its order is not clearly erroneous, arbitrary, and unsupported by the evidence, even in the face of dictum from an inapposite case.

I would thus affirm the PUC's order.