Durrell A. Chappell, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Calvin Lieberman*, with him *Stephen B. Lieberman, Calvin Lieberman & Associates*, for petitioner.

*R. Knickerbocker Smith, Jr.*, Assistant Counsel, with him *John G. Alford*, Deputy Chief Counsel, *Joseph Malatesta, Jr.*, and *George M. Kashi*, Chief Counsels, for respondent.

OPINION BY JUDGE BLATT, February 19, 1981:

Durrell A. Chappell (petitioner), the owner-operator of the DAC Community Service of Reading and Berks County (DAC), appeals here from an order of the Pennsylvania Public Utility Commission (PUC)

which directed him to secure a certificate of public convenience.

Michael F. Feeney, a partner in the Reading Area Medi-Taxi (Reading), filed a complaint with the PUC regarding advertisements in which the DAC had announced the expanding of its emergency and non-emergency medical transportation to include transportation of ambulatory, wheelchair-confined, handicapped and elderly persons to any destination. On December 9, 1975, the PUC instituted a complaint against the petitioner, alleging that the DAC had violated Sections 201 and 202 of the Public Utility Law (Prior Law), Act of May 28, 1937, P.L. 1053, *as amended, formerly,* 66 P.S. §§1121 and 1122,[1] by providing and holding itself out as providing transportation for compensation without a certificate of public convenience.

At a hearing held on December 20, 1977, the petitioner testified that when, prior to knowing of the complaint of the PUC, he had received a letter from Reading's attorney informing him that DAC's advertisement referred to services requiring a PUC license, the DAC had withdrawn its offer to provide services "to any destination" and, on the advice of counsel, had thereafter confined the non-emergency phase of its operations solely to transporting non-ambulatory injured and ill persons to doctors' offices, hospitals, rehabilitation centers and convalescent homes for medical treatment, using three ambulances and a station wagon capable of being used as an ambulance, all of which are medically equipped and manned by a driver and an attendant, both of whom are certified to administer first aid.

---

[1] Repealed by the Act of July 1, 1978, P.L. 598. Similar provisions are now found in Sections 1101 and 1102 of the Public Utility Code, 66 Pa. C. S. §§1101, 1102.

The petitioner asserted that the DAC was operating under the statutory exemption provided by Section 2(6)(i) of the Prior Law, *formerly,* 66 P.S. §1102 (6)(i), now found in Section 102(9) of the Public Utility Code (Code), 66 Pa. C. S. §102(9), which exempts from the definition of common carrier by motor vehicle[2] "any person or corporation who or which furnishes transportation for any injured, ill or dead person." The PUC held, however, that the exemption afforded by Section 102(9) of the Code applied only to transportation of any injured or ill person for purposes of emergency medical treatment, and that historically the PUC had always issued certificates of public convenience to carriers engaged in transportation of injured and ill persons for non-emergency purposes. It cited Reading's license as an example.[3] The administrative law judge's decision, affirmed with minor modifications by the PUC, concluded that the Section 102(9) exemption applied only to the transportation of those injured and ill persons requiring emergency medical treatment and that, therefore, a certificate of public convenience was required for the DAC operations.

---

[2] Section 102 of the Code defines "common carrier by motor vehicle" as:

Any common carrier who or which holds out or undertakes the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation, whether or not the owner or operator of such motor vehicle, or who or which provides or furnishes any motor vehicle, with or without driver, for transportation or for use in transportation of persons or property as aforesaid. . . . .

[3] Under the terms of its certificate of convenience, Reading is licensed to operate a combined service by which it provides transportation in modified motor vehicles with side-opening doors and ramps of ambulatory and wheelchair outpatients as well as of elderly, disabled or physically handicapped persons to a business, doctor's office, shopping areas, church or social activities.

Our scope of review of a PUC order is limited, of course, to whether or not there is a violation of constitutional rights, an error of law, a violation of agency procedure or a lack of evidence to support the findings. *Mobilfone of Northeastern Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 40 Pa. Commonwealth Ct. 181, 397 A.2d 35 (1979). And it is well established with regard to the PUC that:

> The Commission, as an administrative agency, is peculiarly fitted to interpret its own orders, especially where the question raised concerns the extent and limits of transportation rights granted a carrier under a certificate issued by the Commission. In recognition of this principle a court will not set aside a construction placed upon its own orders by an administrative agency unless the result is clearly erroneous, arbitrary, and unsupported by evidence.

*Delaware Valley Transportation Co. v. Pennsylvania Public Utility Commission,* 42 Pa. Commonwealth Ct. 221, 223, 400 A.2d 678, 679 (1979) (quoting *W. J. Dillner Transfer Co. v. Public Utility Commission,* 175 Pa. Superior Ct. 461, 467, 107 A.2d 159, 162 (1959)). Admittedly, the construction given a statute by those charged with its execution and application is entitled to great weight and should be disregarded or overturned only for cogent reasons and if such construction is clearly erroneous. *Longo Liquor License Case,* 183 Pa. Superior Ct. 504, 132 A.2d 899 (1957). In addition, while the fundamental purpose of statutory construction is to ascertain and effectuate the intention of the legislature, *Appeal of Neshaminy Auto Villa, Ltd.,* 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976), where, as here, the words of the statute are not explicit, legislative intent may be ascertained by considering, *inter alia,* administrative interpretations of

the statute. Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c)(8). Finally, however, although a court is empowered by the Statutory Construction Act of 1972, 1 Pa. C. S. §1921, to resolve statutory ambiguities by the determination of legislative intent, it must be remembered that the legislature is presumed not to have intended a result that is absurd, illogical or unreasonable. *Summit School, Inc. v. Department of Education*, 43 Pa. Commonwealth Ct. 623, 402 A.2d 1142 (1979).

The legislative intent here is obviously open to question and we would hope that consideration may soon be given to some appropriate statutory revision. We believe, however, that the legislature obviously did not intend for Section 102(9) of the Code to apply with respect to *all* injured and ill persons, for such an interpretation would encompass persons suffering from minor ailments as well as the more seriously ill and would include transportation to non-medical as well as to medical destinations. Recognizing this, the PUC elected, by its own admission, to adopt a narrow construction of the statutory exemption and to apply it only to the transportation of injured and ill persons for emergency treatment. We must, therefore, consider the propriety of the narrow construction here given.

Initially, we must note that Section 102(9) of the Code, however, is *not* one of the classes of statutory provisions specifically enumerated by the legislature as requiring strict construction. We believe, therefore, that it must be liberally construed to effect the objects of the statute and to promote justice. Section 1928(c) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1928(c). The object of Section 102(9) of the Code, we believe, is to afford an exemption from the definition of common carrier by motor vehicle to carriers which transport injured or ill persons because of and

with respect to their status as injured or ill. The exemption, therefore, must be interpreted as applying to the transportation which is afforded persons who, because they are injured and ill, require transportation for medical treatment. In other words, the statute exempts the transportation of *patients*[4] for purposes of medical treatment. Such a construction is not actually at odds with PUC licensing practices, for carriers such as Reading have already been licensed to provide a medi-taxi service to the elderly and incapacitated, in addition to the ill, for non-medical as well as for medical purposes. On the other hand, DAC's non-emergency operation is limited to providing transportation for non-ambulatory patients to and from various medical facilities for medical treatment, and it does not offer taxi service, transport ambulatory persons, or provide transportation for non-medical purposes. The DAC provides, in effect, an ambulance service which falls within the exemption afforded by Section 102(9) of the Code, as opposed to a medi-taxi service, which does not.

We will, therefore, reverse the PUC order.

ORDER

AND Now, this 19th day of February, 1981, the order of the Public Utility Commission in the above-captioned matter is hereby reversed.

-------

[4] Under Section 103 of the Health Care Facilities Act, Act of July 19, 1979, P.L. 130, 35 P.S. §448.103, the legislature has defined "patient" as "[a] natural person receiving health care in or from a health care provider." "Health Care Provider" is defined as "[a] person who operates a health care facility or health care institution or health maintenance organization."