Robert Burgit, t/d/b/a Bob Burgit City Limousine Service, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Argued February 1, 1984, before Judges WILLIAMS, JR., BARRY and COLINS, sitting as a panel of three.

*Herbert R. Nurick, McNees, Wallace & Nurick,* for petitioner.

*Michael C. Schnierle,* Assistant Counsel, with him, *Kenneth E. Nicely,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Michael R. Muth,* for intervenor, Posten Taxi Company, Inc.

OPINION BY JUDGE BARRY, May 2, 1984:

Before us is a petition for review of an order of respondent, Pennsylvania Public Utility Commission (PUC), adopted December 3, 1982, and entered January 21, 1983. On September 16, 1981, intervenor Posten Taxi Company, Inc., (Posten) filed a complaint before the PUC against petitioner, Robert Burgit, t/d/b/a Bob Burgit City Limousine Service (Burgit). The complaint alleged, *inter alia,* that Burgit was not acting within the scope of the certificate granted to him by the PUC to operate a limousine service in the Wilkes-Barre area by the use of luxury-type vehicles without meters or dome lights. Posten requested the PUC to enjoin Burgit from providing the allegedly unauthorized service and requested that his rights be revoked. The matter was referred to an administrative law judge, who dismissed the complaint after a hearing and ordered Burgit to "cease and desist advertising limousine service in the Yellow Pages under the heading of 'Taxicabs.'" Posten filed exceptions to that decision, which exceptions were denied

by the administrative law judge on October 20, 1982. Posten then appealed to the PUC, which, by a 3-2 vote, granted the appeal "to the extent consistent with this opinion and order." The PUC also ordered that Burgit cease and desist from operating in his limousine service "any vehicle which is not a Cadillac, a Lincoln or a Chrysler," and that Burgit remove immediately from the roofs of his vehicles the large billboard advertising "regular public passenger service," that he immediately cease and desist from offering the limousine service on a non-exclusive basis, that he cease and desist from advertising limousine service in the Yellow Pages under the heading of Taxicabs, and that he conform to the provisions set forth in the order and submit to inspection by a PUC official.

On February 15, 1983, Burgit filed with the PUC a petition for reconsideration of the order of January 21, 1983, requesting the PUC to affirm the initial decision of the administrative law judge. Burgit also filed, on February 17, 1983, a petition for review of the order with this Court. On February 18, 1983, the PUC granted reconsideration pending further consideration of the merits of the petition. By order entered April 4, 1983, the PUC denied the relief requested in the petition for reconsideration. On April 5, 1983, the petition for review filed in this Court was stricken because it became inoperative pursuant to Pa. R.A.P. 1701(b)(3). Finally, on April 7, 1983, Burgit filed another petition for review of the order of the PUC entered January 21, 1983. This is the petition presently before this Court. Burgit then filed with the PUC a petition for supersedeas of the PUC's January 1983 order, which petition for supersedeas was denied. On May 6, 1983, Burgit filed with this Court an Application for Stay or Supersedeas and Brief in Support of Stay or Supersedeas. After a

hearing on this matter, Senior Judge PAUL S. LEHMAN stayed the PUC's January 1983 order "to the extent that it requires [Burgit] to operate only specified makes of vehicles." After examining the record in the case before us, we affirm the order of the PUC of January 1983 to the extent that it determined that Burgit exceeded the scope of his certificate, and ordered that Burgit remove from the roofs of his vehicles billboards advertising "regular public passenger service," that Burgit cease and desist from offering the limousine service on a non-exclusive basis, that Burgit cease and desist from advertising limousine service in the Yellow Pages under the heading of Taxicabs, and that Burgit submit to an inspection by a PUC official. The order of the PUC is remanded to the extent that it orders Burgit to cease and desist from operating any vehicle "which is not a Cadillac, a Lincoln or a Chrysler." We remand to the PUC for a better definition of what constitutes a "luxury-type vehicle."

In his petition for review, Burgit alleges several areas in which he contends that the PUC erred in its determination. These will be discussed seriatim. Burgit first makes a due process argument, contending that the PUC acted contrary to law in eliminating certain elements of rights granted to him by the PUC when his certificate was issued. In this regard, Burgit contends that the PUC has, at all times, considered him to have "call or demand"[1] authority, albeit the call or demand service is to be a limousine service, as opposed to a taxicab service. Concluding that Burgit

---

[1] Call or demand service (also termed "call and demand service") is defined as follows in 52 Pa. Code §29.15:

Unless otherwise specifically provided in the certificate of public convenience, a common carrier operating a call or demand service shall have all of the following rights:

(1) The transportation of persons on call or demand in the area authorized by the certificate.

should be governed by limousine service regulations, which do not include certain services allowed by call or demand service, the PUC in its opinion stated "the phrase 'call or demand' was obviously used because of the lack of any other category and may be regarded as mere surplusage." The PUC has acknowledged that it erred in regarding the expression "call or demand" in Burgit's certificate as surplusage and striking it from the certificate. In its memorandum of law in support of its answer in opposition to [Burgit's] application for stay or supersedeas, the PUC continued as follows:

The Commission's intended effects in doing so were to preclude Burgit from continuing to render service in response to street hails as his vehicles cruised the streets, and to preclude him from rendering non-exclusive service. These two effects, the Commission contends were appropriate and are supported by the record in this proceeding. However, an unintended effect of the Commission's actions was to substantially reduce the geographic scope of Burgit's certificate, as a result of the difference between the regulation governing "call or demand" service, 52 Pa. Code §29.312(4) and the regulation governing limousine service, 52 Pa. Code §29.332. However, the Commission contends that this error of law does not enhance Burgit's entitlement to a stay of the Commission's order,

---

(2) The transportation of persons from any points in the area authorized by the certificate to any other point in this Commonwealth.

(3) The transportation of persons from any point in this Commonwealth to any point in the area authorized by the certificate, provided that the call or order for such transportation is received in the area authorized by the certificate.

as the ordering paragraphs of the Commission's order do not explicitly restrict Burgit's operation to a smaller geographical area than he previously enjoyed.

Burgit contends that no other element of call or demand service can be taken away from him in the present proceeding and, in this regard, relies on Section 703(g) of the Public Utility Code (Code), 66 Pa. C. S. §703(g), which provides:

The commission may, at any time, after notice and after opportunity to be heard as provided in this chapter, rescind or amend any order made by it. Any order rescinding or amending a prior order shall, when served upon the person, corporation, or municipal corporation affected, and after notice thereof is given to the other parties to the proceedings, have the same effect as is herein provided for original orders.

He also points to Section 504 of the Administrative Agency Law, 2 Pa. C. S. §504:

No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

Burgit contends that the instant case was not instituted to determine whether he did or did not possess call or demand rights, but rather to determine whether he operated beyond his authority, which already included call or demand service. Because he was not given warning that he had to defend this case on the basis that he does not hold the call or demand rights awarded to him by the PUC, but only whether he was operating within the scope of his rights which

already included call or demand service, he contends that the above cited provisions have been violated and, at the same time, his constitutional right of due process has also been violated. We are of the opinion that Burgit's allegation of error in this regard is without merit because the complaint filed by Posten adequately placed Burgit on notice as to the nature of the allegations: that Burgit has operated a taxi service and has failed to comply with the standards established for limousine service. Because call and demand service is closely associated with taxi service, the hearing on Burgit's initial application and the complaint filed by Posten necessarily encompassed a determination of whether Burgit was operating a limousine or taxi service and whether this operation would attempt to compete with Posten for the taxi business in the Wilkes-Barre area. Posten correctly points out that the phrase "call or demand" contained in Burgit's certificate cannot be read in a vacuum. It must be read in conjunction with the language granting Burgit a right to operate a limousine service, on call or demand, with luxury vehicles. All of these elements must be viewed together in an effort to determine what was contemplated by Burgit and the PUC at the time of the initial application and the grant of the certificate. "Where, as here, the PUC is required to determine the extent of the authority granted in a certificate of public convenience, 'the type of service contemplated at the time of the original application is a significant consideration.' Ferry v. Public Utility Commission, 192 Pa. Superior Ct. 331, 336, 162 A.2d 266, 269 (1960) [.]'' Purolator Security, Inc. v. Public Utility Commission, 32 Pa. Commonwealth Ct. 175, 178, 378 A.2d 1020, 1022 (1977).

As stated above, Posten's complaint charged Burgit with violating "the rights granted by operating a

taxicab service without authority," in that he has failed to operate a limousine service because he has not utilized luxury-type vehicles, and has failed to comply with the standards established for limousine type service for which he was granted authority from the PUC. The "notice to answer or satisfy" served with the complaint clearly apprised Burgit that if he filed an answer denying the allegations in the complaint, he would be accorded a hearing and that his certificate could be revoked or suspended and that any other penalty or remedy authorized by the Public Utility Code could be imposed.

In his answer, Burgit denied operating a taxicab service, failing to operate a limousine service, and failing to operate luxury-type vehicles. He also denied "any other allegations of improper activity or actions not authorized by the authority granted to him by the Pennsylvania Public Utility Commission." It has been pointed out that at no time prior to this has Burgit complained of the adequacy of the notice received. Since there were several hearings in this regard, it is obvious that Burgit understood the nature of the complaint against him and had an opportunity to respond to Posten's complaint which alleged that he was operating a taxicab service rather than a limousine service. Therefore, Burgit cannot now complain that he lacked notice regarding the PUC's order that he cease and desist from activities which are inconsistent with limousine service. *See also Ryan v. Public Utility Commission,* 143 Pa. Superior Ct. 517, 17 A.2d 637 (1941), *cert. denied,* 314 U.S. 640 (1941); *W. J. Dillner Transfer Company v. Public Utility Commission,* 175 Pa. Superior Ct. 461, 107 A.2d 159 (1954); *Fusaro v. Public Utility Commission,* 34 Pa. Commonwealth Ct. 14, 382 A.2d 794 (1978).

Burgit next alleges error because he contends that the PUC acted beyond the scope of its authority in

ordering Burgit to cease and desist from operating any vehicle not of a certain make, from advertising in the Yellow Pages under the heading of Taxicabs, from displaying billboards advertising "regular public passenger service" from the roofs of his vehicles, and from offering the limousine service on a non-exclusive basis.[2] It is evident that the legislature, in enacting Section 501 of the Public Utility Code, 66 Pa. C. S. §501, specifically granted to the PUC express powers:

>    (a) . . . [T]he commission shall have full power and authority, and it shall be its duty to

---

[2] The terms "exclusive service" and "nonexclusive service" were first formally defined by a Commission regulation adopted at 11 Pa. Bulletin 409 (January 24, 1981) and codified at 52 Pa. Code §29.1:

> *Exclusive service*—Transportation on any given trip when the first or principal person, party, or group hiring the vehicle has the exclusive right to determine where, when, or if any other passengers shall be carried on that trip.

> *Nonexclusive service*—Transportation on any given trip where passengers other than the first or principal person, party, or group hiring the vehicle may be carried as permitted by the applicable tariff provisions of the carrier and the rules and regulations governing the class of service under which the vehicle is operating.

Prior to January 19, 1974, a Commission regulation, 52 Pa. Code §29.125, specifically prohibited taxicabs from picking up a second fare after being occupied by a fare paying passenger, without the first passenger's consent; this amounted to a prohibition against non-exclusive service. There was no similar regulation for limousines. At 4 Pa. B. 91 (January 19, 1974), the Commission promulgated a waiver of its prohibition to permit group riding in taxicabs during the energy crisis. This waiver remained in effect for taxicabs until the Commission's passenger transportation regulations were amended on January 24, 1981. *See* 11 Pa. B. 549 (February 7, 1981). Under the present regulations, holders of "call or demand" certificates must offer at least exclusive service, and may offer non-exclusive service. 52 Pa. Code §29.312(1) and (7). Limousine certificate holders may offer only exclusive service. 52 Pa. Code §29.332(1).

enforce, execute and carry out, by its regulations, orders, or otherwise, all and singular, the provisions of this part, and the full intent thereof; and shall have the power to rescind or modify any such regulations or orders. . . .

(b) . . . The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this commonwealth. The commission may make such regulations, not inconsistent with law, as may be necessary or proper in the exercise of its powers or for the performance of its duties.

(c) . . . Every public utility, its officers, agents, and employees, and every other person or corporation subject to the provisions of this part, affected by or subject to any regulations or orders of the commission or of any court, made, issued, or entered under the provisions of this part, shall observe, obey, and comply with such regulations or orders, and the terms and conditions thereof.

*See also Fusaro.* We conclude in this regard, therefore, that the PUC acted within its scope of authority in ordering Burgit to cease and desist from the various operations outlined above.

Burgit next alleges that the PUC erred when it gave its regulations retroactive effect, thereby acting contrary to law. To buttress his argument, Burgit points to the PUC's regulations at 52 Pa. Code §§2.13 and 29.331-.334, which were adopted by the PUC at its public meeting held November 20, 1980. 11 Pa. B. 409, 410 (1981). His rationale is that since he obtained his certificate in 1978, when no formal regulations existed concerning the type of vehicle which could be used in "limousine service," it was error for the PUC to ap-

ply those regulations adopted after the issuance of the certificate to Burgit. The PUC counters this argument, and we agree with its reasoning, by stating that it merely applied the regulations contained in 52 Pa. Code §§29.301-.355 to Burgit's certificate. Reference is made to 7 Pa. B. 3006 (1977), 8 Pa. B. 3440-41 (1978), and 11 Pa. B. 409-10 (1981). Subject to certain limitations, such as the fact that the PUC may not by general regulation avoid the necessity of requiring substantial evidence in a particular case, the PUC may promulgate general rules and regulations applicable to a class of utilities, and may rescind or modify such regulations. *Dillner*. In the instant case, the PUC did not apply any regulations retroactively, but applied its regulations prospectively to existing certificate holders. Moreover, the regulations at issue are not newly formulated regulations, but rather revisions of existing regulations which applied to all certificate holders. 7 Pa. B. 3006 (1977).

Our scope of review of a PUC order is limited to whether or not there is a violation of constitutional rights, an error of law, a violation of agency procedure or a lack of evidence to support the findings. *Chappell v. Public Utility Commission*, 57 Pa. Commonwealth Ct. 17, 21, 425 A.2d 873, 875 (1981). As that case points out,

[I]t is well established with regard to the PUC that: "The Commission, as an administrative agency, is peculiarly fitted to interpret its own orders, especially where the question raised concerns the extent and limits of transportation rights granted a carrier under a certificate issued by the Commission. In recognition of this principle a court will not set aside a construction placed upon its own orders by an administrative agency unless the result is clearly erro-

190

neous, arbitrary, and unsupported by evidence"
Delaware Valley Transportation Co. v. Pennsylvania Public Utility Commission, 42 Pa. Commonwealth Ct. 221, 223, 400 A.2d 678, 679 (1979) (quoting W. J. Dillner Transfer Co. v. Public Utility Commission, 175 Pa. Superior Ct. 461, 467, 107 A.2d 159, 162 (1959)).

Prior to adopting its formal regulations, the PUC looked to the express intent of the certificate holder at the time of the application in order to determine the type of service that was contemplated. *See Delaware Valley Transportation Company v. Public Utility Commission,* 42 Pa. Commonwealth Ct. 221, 400 A.2d 678 (1979), and *Purolator Security.* As stated in *Yellow Limousine Service, Inc. v. Overbrook and West Philadelphia Taxicab Service, Inc.,* 50 Pa. P.U. 525, 529 (1977): "In interpreting provisions of motor carrier certificates, this commission has generally followed a case-by-case approach. It has tended to rely mainly on the history of the particular authority in question and has not sought to develop a system of standard interpretation in language." Likewise, in *Applications of Steffen, t/a J. M. Steffen Company,* 11 Pa. P.S.C. 420, 421 (1932), the commission stated "the character of a certificate is determined by the application or the testimony produced at the hearing and is evidenced by the tariffs filed by the certificate holder."

Applying these principles to the instant case, Burgit testified that he wished to render a service involving the transportation of dignitaries and prominent people and transportation for proms and weddings. He also stated that he did not wish to provide taxicab service and would charge higher rates consistent with limousine service. From the testimony, it is evident that Burgit has been providing a taxicab

service instead of the limousine service which his certificate permitted. He has used police vehicles and used state vehicles without air conditioning and has created a rate structure which has caused Posten substantial economic harm. Burgit has taken many of Posten's long term contracts with private companies and government agencies because his rates are lower than those of a taxicab company. Also, having examined the testimony of several customers serviced by Burgit, it becomes clear that even customers view his service as a taxicab service rather than a limousine service. This, of course, is contrary to the scope of Burgit's certificate. The PUC correctly points out that its order represents an attempt on its part to redirect Burgit's efforts from operating an unauthorized taxicab company to rendering the limousine service which he is authorized and obligated to render. Therefore, when the PUC directed Burgit to cease and desist from using signs on the roofs of his vehicles advertising "regular public passenger service", advertising in the Yellow Pages under the heading of "Taxicabs", and directing that he cease and desist from offering his limousine service on a non-exclusive basis, we conclude that there is no abuse of discretion and affirm the PUC's order.

In one area, however, as aforementioned, we must remand to the PUC in order that a better and more definitive definition be set forth as to what constitutes a "luxury-type vehicle."

The order of the PUC entered January 21, 1983, therefore, is affirmed in part and the matter remanded in part.

### Order

Now, May 2, 1984, the order of the Pennsylvania Public Utility Commission entered January 21, 1983, is hereby affirmed in part and the case remanded in

192

part for proceedings not inconsistent with the foregoing opinion.

Jurisdiction relinquished.