509 A.2d 1364

Limelight Limousine, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued February 3, 1986, before Judges ROGERS and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Gerald Gornish,* Of Counsel: *Wolf, Block, Schorr and Solis-Cohen,* for petitioner.

*Karen Dill Moury,* Assistant Counsel, with her, *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, May 27, 1986:

Limelight Limousine, Inc. (Petitioner) appeals from a declaratory order of the Pennsylvania Public Utility Commission (Commission) which determined that Petitioner's certificate of right did not include the right to provide Airport Transfer Service.

On August 2, 1976, Petitioner's predecessor[1] was granted the following right:

---

[1] The original certificate holder was a partnership trading as Limelight Limousine. The partnership's certificates were transferred to the present Petitioner in 1984.

> To transport, as a common carrier, persons in luxury type limousines, having a seating capacity of no more than seven (7) persons, plus the driver, between points in the city and county of Philadelphia.

On November 13, 1979, the Commission granted an amendment to this authority which provided the following additional right:

> To transport, as a common carrier, persons, in limousine service, between points in the city and county of Philadelphia.
>
> SUBJECT TO THE FOLLOWING RESTRICTIONS:
>
> A. The transportation is limited to the use of vehicles having a seating capacity not to exceed twelve (12) passengers, including the driver.
>
> B. The transportation is limited to the operation of not more than five (5) vehicles in said service.

Pursuant to this authority, Petitioner began providing service to the Philadelphia International Airport on a per-passenger payment basis, using vehicles with a 12-seat capacity.

In 1981, the Commission adopted regulations which created a distinction between "Limousine Service" and "Airport Transfer Service". Under these regulations, "Limousine Service" is limited to "exclusive service"[2] on

---

[2] The terms "exclusive service" and "nonexclusive service" were defined by Commission regulation adopted in 1981 and codified at 52 Pa. Code §29.1:

> *Exclusive service*—Transportation on any given trip when the first or principal person, party, or group hiring the vehicle has the exclusive right to determine where, when, or if any other passengers shall be carried on that trip.
>
> *Nonexclusive service*—Transportation on any given trip where passengers other than the first or principal per-

an hourly or per mile basis, and must be provided in vehicles which seat no more than 10 persons.[3] "Airport Transfer Service", on the other hand, is limited to "nonexclusive" service on a per-passenger basis in vehicles with no seating restrictions.[4]

Soon after acquiring its present interest in 1984, Petitioner filed a petition with the Commission requesting a declaratory order to confirm that its certificate of authority included the authority to provide "Airport Transfer Service", and thus confirm that it had the authority to continue its present service to the airport in 12-passenger vans at per-passenger rates. On April 18, 1985, the Commission issued a declaratory order which determined that Petitioner's certificate did not include

---

son, party, or group hiring the vehicle may be carried as permitted by the applicable tariff provisions of the carrier and the rules and regulations governing the class of service under which the vehicle is operating.

[3] Section 29.332 of the regulations, 52 Pa. Code §29.332, defines "Limousine Service" as follows:

(1) To transport persons on an exclusive basis between points as authorized by the certificate, provided that the order for service is received in advance of the actual rendering of service and not by street hail.

(2) To charge for service based upon use of a limousine with payment made by a single person or organization and not by passengers as individuals.

[4] Section 29.342 of the regulations, 52 Pa. Code §29.342, defines "Airport Transfer Service" as follows:

(1) To transport persons on a nonexclusive, individual charge basis from points authorized by the certificate to the airport or airports specified by the certificate, and *vice versa*.

(2) Airport transfer service may be offered on a scheduled basis serving specified points according to a published time schedule or on a request basis with the origin or destination of the transportation to or from the airport arranged between the individual and the carrier, or on both bases.

the authority to provide "Airport Transfer Service", but instead was limited to the authority to provide "Limousine Service" as that term is defined in the 1981 regulations. Petitioner appeals to this court from the Commission's order.[5]

Petitioner argues that the 1979 amendment to its certificate was intended to give it the authority to provide what is now known in the regulations as "Airport Transfer Service". Where, as here, the Commission is required to determine the extent of the authority granted in a certificate of public convenience, the type of service contemplated at the time of the original application is a significant consideration. *Burgit v. Pennsylvania Public Utility Commission*, 82 Pa. Commonwealth Ct. 179, 475 A.2d 1339 (1984); *Purolator Security, Inc. v. Pennsylvania Public Utility Commission*, 32 Pa. Commonwealth Ct. 175, 378 A.2d 1020 (1977); *Ferry v. Pennsylvania Public Utility Commission*, 192 Pa. Superior Ct. 331, 162 A.2d 266 (1960). In the present case, the type of service contemplated by the 1979 amendment to Petitioner's certificate can be determined by an examination of the testimony given at the administrative hearing in which the amendment request was made. In its opinion, the Commission stated that the testimony at that hearing indicated "that limousine service at an airport in a van was intended." We note that the record of the hearing also establishes that this new service was in addition to Petitioner's existing fleet of "luxury type limousines" which were described as "exclusive service" vehicles. Although the testimony at the hearing was not conclusive on the issue of wheth-

---

[5] Our scope of review of a Commission order is limited to whether or not there is a violation of constitutional rights, an error of law, a violation of agency procedure or a lack of evidence to support the findings. *Chappell v. Pennsylvania Public Utility Commission*, 57 Pa. Commonwealth Ct. 17, 425 A.2d 873 (1981).

er the new service was to be charged on a per-passenger or per-hour basis, the testimony did establish that the service contemplated involved picking up passengers at their individual homes. In addition, although arrangements for these trips were often made by a travel agent on behalf of its clients, they were at times made directly by the individual passengers. These facts suggest that, contrary to the Commission's conclusion, the service was at least at times to be provided on a per-passenger fee basis. It thus seems clear that at the time of the amendment request, Petitioner requested and received the right to provide airport service in a twelve-passenger van on a per-passenger basis. This right is consistent with the service which is now defined as "Airport Transfer Service" in the Commission regulations.

In determining that Petitioner's certificate did not include Airport Transfer Service, the Commission found controlling the fact that the right granted in the 1979 amendment was referred to as "limousine service". Applying the definition of that term as found in the 1981 regulation, the Commission reasoned that this right did not include the right to provide "Airport Transfer Service." The Commission's analysis ignores the fact that, at the time of amendment, the regulations contained no definition of "limousine service." Therefore, it cannot reasonably be assumed that by referring to the new service as "limousine service" the Petitioner and the Administrative Law Judge intended to limit the service to the type now described as "Limousine Service" under Section 29.332 of the new regulations. Indeed, the record of the hearing clearly indicates that such a limitation was not intended.

The prior use of term "limousine" to describe the type of nonexclusive airport service now known as Airport Transfer Service was apparently not uncommon. In

the Commission's 1977 decision in *Yellow Limousine Service, Inc. v. Overbrook and West Philadelphia Taxicab Service, Inc.,* 50 Pa. P.U.C. 525, 528-29 (1977), the Commission noted:

> The Commission uses the word 'limousine' in many certificates. It is commonly used in 'weddings and funerals' certificates to mean a luxury-type vehicle. The word has also been used when service at an airport (and at 'per-passenger' rates) in a small bus (or enlongated [sic] auto) is clearly intended. This word has never been defined by Commission regulations but the two distinct meanings have been clearly established.

In addition, the Commission's current regulation regarding Airport Transfer Service acknowledges this same terminology when it states that it applies to the "airport transfer, *airport limousine,* class of common carriage." 52 Pa. Code §29.341 (emphasis added). In view of the two distinct definitions given to limousine service,[6] it becomes clear that the authority to provide service under the first definition—that of a "luxury type" vehicle—was explicitly granted to Petitioner in its original 1976 certificate. The 1979 amendment, which describes the additional 12-passenger vehicles as simply "limousines" was obviously intended to confer the additional right to provide limousine service under the second definition—that of an airport bus at per-passenger

---

[6] The use of the term 'limousine' to describe two distinct types of vehicles is also noted in *Webster's New Collegiate Dictionary,* which provides the following definition of "limousine":
1. a large luxurious often chauffeur-driven sedan that sometimes has a glass partition separating the driver's seat from the passenger compartment.
2. a small bus with doors along the side like those of a sedan [an airport limousine].

rates. From this, and from the testimony at the hearing, we find it clear that what was referred to as "limousine service" in the certificate is indentical to, and now described as, "Airport Transfer Service" in the Commission regulations. We therefore believe that the Commission erred in determining that Petitioner's right did not include the right to provide Airport Transfer Service.

The Commission cites *Burgit* in support of its contention that it can apply its subsequently adopted regulations regarding limousines to limit the extent of Petitioner's existing certificate. The court in *Burgit* held that the Commission did not retroactively apply its regulations by subjecting the petitioner's limousine certificate to subsequently adopted regulations concerning the type of vehicle to be used in limousine service. 82 Pa. Commonwealth Ct. at 189, 475 A.2d at 1344. In *Burgit*, however, there was no question that the service contemplated by the petitioner at the time of application was indeed a luxury-type limousine service. *Id.* at 190-91, 475 A.2d at 1344. In addition, we noted that the regulations complained of were merely revisions of existing regulations which applied to all such certificate holders. *Id.* at 189, 475 A.2d at 1344. In *Burgit*, therefore, the Commission correctly applied current regulations regarding limousine service to a limousine service certificate holder. In contrast, in the present case it was clear that despite the use of the term "limousine service", the Petitioner had applied for, and was granted what is now known as Airport Transfer Service. Unlike *Burgit*, therefore, the Commission here did not limit the rights of a certificate holder by applying current regulations applicable to the *same* class of certificate, but instead limited such rights by applying regulations applicable to a *different* class of certificate. Section 29.13 of the Commission's regulations, 52 Pa. Code §29.13, which sets forth the various classes of certificates, states:

Any certificated service which does not completely correspond to a standard class shall be governed, where practicable, by the regulations for the standard class to which it most nearly corresponds.

In applying the current regulations regarding "Limousine Service" to what must clearly be construed as an Airport Transfer Service certificate, the Commission has simply applied the wrong regulations, and its decision must be reversed.

Accordingly, we reverse the order of the Commission, and remand for a declaratory order confirming the right of Petitioner to provide Airport Transfer Service.

ORDER

NOW, May 27, 1986, the order of the Pennsylvania Public Utility Commission, Docket No. A-00105268, dated April 8, 1985, is hereby reversed, and the matter is remanded for entry of a declaratory order consistent with this opinion.

Jurisdiction relinquished.