## In re Appeal of the Marietta Gravity Water Company from the Decision of the East Donegal Township Board of Supervisors

*Robert W. Hallinger,* for appellee.
*Matthew J. Creme Jr.,* for appellant.

PEREZOUS, *J.,* December 7, 1990—Before the court is the appeal of the Marietta Gravity Water Company from the decision of the East Donegal Township Board of Supervisors granting final unconditional approval for Marble Properties' proposed expansion of a residential development. The development is known as the Village of Rivermoore and is located in East Donegal Township. The existing apartment complex at the Village of Rivermoore, known as Section I, consists of 130 units on 16 acres with a water system served by two on-site wells operated under a public water supply permit issued by the Pennsylvania Department of Environmental Resources. The proposed Section II of the Village of Rivermoore will include 370 living units (garden apartments and town houses, a swimming pool and a community building) on 66 acres.

At its meeting of July 13, 1989; the Board of Supervisors of East Donegal Township gave final unconditional approval for appellee's expansion at Rivermoore. This approval was granted under the township's planned residential development ordinance, which requires that "public facilities" be supplied to each building in a development. The approved expansion plan will allow appellee to

provide water to the anticipated residents of the expansion project by means of on-site wells.

The Marietta Gravity Water Company, a private water company, is the appellant in this appeal. Appellant objects to the approval of the Rivermoore Section II plan on grounds that the use of on-site wells for water supply to the development does not meet the requirements of the East Donegal Township planned residential ordinance.

The PRD ordinance requires that "public facilities" be supplied to each building where water and sewer facilities are used in a planned residential development. The PRD ordinance defines "public facilities" as "a water supply system and any treatment plan which is available for service to the public and which is approved by the Pennsylvania Department of Environmental Resources." Appellant water company asserts that the "public facilities" definition means either a municipal water system or a private regulated utility. The township and appellee, Marble Properties, believe that the definition also includes DER approved on-site systems serving only the buildings in a development.

The issue in this case is whether or not the on-site well system at the Village of Rivermoore, which will have 500 connections serving 1000 residents, qualifies as "public facilities" under the East Donegal Township planned residential development ordinance.

Before addressing the primary issue, it should be noted that appellee has filed new matter to the notice of land use appeal. Appellee contends that appellant lacks standing to challenge the decision of the board. Appellant, on the other hand, claims that neither party raised the issue of standing in the proceedings before the Board of Supervisors and failure to raise the issue of standing at the board

level constitutes a waiver of such issue. *Cohen v. Zoning Board of Adjustment of the City of Pittsburgh,* 53 Pa. Commw. 311, 417 A.2d 852 (1980). Nevertheless, appellant maintains that it is appropriately a party to this action and has standing to appeal from the decision of the board.

For a person to have standing, the person must be aggrieved. The person's interest must be direct, immediate, pecuniary and substantial. *Landsdown Borough of Adjustments Appeal,* 313 Pa. 512, 178 Atl. 867 (1934); *Miller v. Zoning Hearing Board,* 112 Pa. Commw. 274, 553 A.2d 1195 (1987). Appellant is the water company in whose franchise area appellee's project is located. To the extent that appellee's interpretation of the ordinance would relieve the appellee of the obligation to obtain water from appellant, there would be a substantial, pecuniary, direct and immediate harm to appellant. In this court's opinion, a finding of standing must be made under these facts and circumstances.

Additionally, appellee asserts that appellant's appeal is untimely. Appellee contends that final plan approval was given by the board on January 12, 1989 and therefore appellant's appeal, filed with the court on August 11, 1989, was untimely. Upon close review of the record, it appears that final unconditional approval was not given until the board's meeting of July 13, 1989, and therefore the court holds that appellant's appeal filed on August 11, 1989, was indeed timely.

In addressing the primary issue, this court is required to interpret the East Donegal Township PRD ordinance; specifically, the definition of "public facilities." That definition has two requirements: the water supply system must be (1) "available for service to the public"; and (2) approved by DER. Since the on-site well system at

Rivermoore has been approved and operates under a DER permit, the precise issue in this case is whether the Rivermoore system is "available for service to the public" within the meaning of the PRD ordinance.

Appellant water company correctly notes that land use ordinances should be strictly construed because they are in derogation of the common law and restrict the use of land. *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987). However, appellant draws the wrong inference from this rule of construction in urging a narrow reading of the "public facilities" definition. As the Supreme Court stated in *Benham:*

"Somewhat paradoxically in the instant case, a strict construction will result from broadly defining 'public sanitary sewer system.' This is because the broad construction of the term will least restrict the owner's use of the land." 514 Pa. at 181, 523 A.2d at 316.

Thus, the rule of strict construction in this case actually requires the court to give the most expansive definition possible to the phrase "available for service to the public," in order to least restrict the owner's use of the land.

In *Benham, supra,* the Middletown Township zoning ordinance required a tract of land to be served by public water and public sanitary sewer systems. The term "public sanitary sewer system" was not defined in the ordinance. The Council of Middletown Township held that a "public sanitary sewer system" must be municipally owned and that no privately owned system was acceptable. The record before the court showed that municipal sewer service was not likely to be extended to this area before the year 2000. As a result, the court was faced with a situation in which the developer would

have been entirely prevented from proceeding. Consequently, the court determined that it must go beyond the words of the statute in defining "public sanitary sewer system." In so doing, the court sought to construe the phrase "public sanitary sewer system" in such a fashion as to least constrict the owner's use of land, while recognizing that local governmental units may promote the public health or general welfare by requiring all persons to use its facilities for a central service in the interest of human uniformity and of assuring availability of such services to everyone. By so doing, the court's decision in *Benham* turned more on an inquiry into whether the township council was reasonable in defining a public sanitary sewer system as one owned by the government. Its conclusion was that the township could not refuse to provide an essential service and then prevent individuals from providing it for themselves. As a result, the court broadly construed the phrase "public sanitary sewer system" to encompass the proposed sewer system of the developer in that case because to do otherwise would have prevented development of the property.

This court is cognizant of the fact that the instant circumstances differ significantly from those in *Benham, supra*. Here, appellee proposes to develop land within the franchise area of appellant who is indeed capable of providing water to such development as a regulated public utility. However, this court is impressed with the Supreme Court's application of the "strict construction" rule where broadly construing the term "public facilities" will least restrict appellee's use of the land. This court, as did the Supreme Court in *Benham, supra,* recognizes that local governmental units may promote the public health or general welfare by requiring all persons to use its facilities for essential service in

the interest of uniformity and availability. See *Ridley Arms Inc. v. Township of Ridley,* 90 Pa. Commw. 143, 522 A.2d 1069 (1987). However, this court cannot comprehend how a DER approved on-site system serving the buildings in appellee's development can lead to problems with uniformity or availability.

Appellee contends, and this court agrees, that the ordinary meaning of the phrase "available for service to the public" clearly covers a water system which will serve 500 households and over 1000 individuals in a discrete geographic area. In considering the ordinary meaning of the word "public" when used as a noun, this court may look to dictionary definitions and common usage. Relevant dictionary definitions of the noun "public" are as follows:

"(1) The general body of mankind, or of a nation, state or community;. . .also, a particular body or aggregation of people,. . ." Webster's New International Dictionary, unabridged (2d ed. 1942).

"(2) The people as a whole: populace. (3) A group of people having common interests or characteristics." Webster's New Collegiate Dictionary (1981).

Both dictionary definitions make clear that the word "public" means a particular group of people either in a community or with common interests or characteristics. The 1000 individuals who will live in the 500 homes comprising the planned residential development known as the Village of Rivermoore are, in this court's opinion, unquestionably a particular aggregation of people with common interests or characteristics and a sense of community, and are therefore "the public" within discrete geographic boundaries of the 88 acres constituting Rivermoore.

Even if this court were to determine that the phrase "the public" was ambiguous, we would then

be required to determine the legislative intent behind the use of the phrase in the ordinance. Legislative intent may be ascertained through administrative interpretation of the provision. Statutory Construction Act of 1972, 1 Pa.C.S. §1921(c)(8). In determining legislative intent, the construction given a statute by those charged with its execution and application is entitled to great weight and should be disregarded or overturned only for cogent reasons and if such construction is clearly erroneous. *Chappell v. Pennsylvania Public Utility Commission*, 57 Pa. Commw. 17, 425 A.2d 873 (1981).

Based upon the foregoing discussion of the ordinary meaning of "the public," it cannot be said that the township's interpretation of the PRD ordinance is "clearly erroneous." To the contrary, the township's interpretation is the strongest and most relevant evidence that the Board of Supervisors intended to permit on-site water supply systems under the PRD ordinance. In fact, the rule requiring that great weight be given to an administrative interpretation should be applied even more staunchly in the present case since the interpretation is not that of an administrative agency construing the action of a separate legislative body, but rather, is an interpretation of the enactment by the legislative body itself. In this court's opinion, the Board of Supervisors' interpretation of the PRD ordinance should clearly prevail over other artificial rules of construction or tangential indicia of intent.

Accordingly, this court enters the following

## ORDER

And now, December 7, 1990, the appeal of the Marietta Gravity Water Company from the decision

58

of the East Donegal Township Board of Supervisors is hereby denied and the decision of the board is affirmed.